## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**SALLY BEAUTY SUPPLY, LLC,**

*Plaintiff,*

v.

**CARIBBEAN RETAIL VENTURES, INC., d/b/a ALL WAYS 99, *et al.*,**

*Defendants.*

**CIVIL NO. 18-1844 (DRD)**

## OPINION AND ORDER

Pending before the Court is Codefendant, Caribbean Retail Ventures, Inc.'s (hereinafter, "All Ways 99") *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Docket No. 43) wherein All Ways 99 is seeking a dismissal of the instant case for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiff, Sally Beauty Supply, LLC filed its respective response in opposition thereto. *See* Docket No. 54. A *Reply* was then filed by All Ways 99. *See* Docket No. 61.

For the reasons stated herein, the Court **DENIES** All Ways 99's *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Docket No. 43).

### I.       FACTUAL AND PROCEDURAL BACKGROUND

The instant case arises out of a fire that erupted on November 7, 2017 at the Morovis Plaza Shopping Center as a result of the malfunction of a gasoline-powered generator belonging to an All Ways 99 store, which resulted in damages to adjacent store, Sally Beauty Supply. *See* Docket No. 1. As a result, thereof, Sally Beauty Supply, LLC was forced to close its operations

preventing the store from gaining profits from sales. *See Id.* All Ways 99, when answering the complaint admitted "the improper use of a gasoline powered generator that resulted in a fire, and admit[ted] the negligence." Docket No. 8 ¶ 12.

On July 7, 2020, All Ways 99 filed a *Motion to Dismiss for Lack of Subject Matter Jurisdiction* (Docket No. 43) wherein a dismissal is sought on grounds of lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for lack of privity. To wit, All Ways 99 argues that "the store that suffered the alleged damages is actually owned by Sally Beauty de Puerto Rico, Inc. ("Sally PR"), a Puerto Rico corporation and nothing more than an affiliate of SBS. It is uncontested that it was Sally PR who entered into a lease agreement to operate the Morovis store from which [Sally] claims it 'recognized profits.' Docket No. 43 at 2. Likewise, according to All Ways 99, SPR earns profits from operating its Morovis store, pays local taxes in Puerto Rico for the profits generated before being recognized by Sally Beauty Supply, LLC, and Sally PR is merely an affiliate of Sally, whom indirectly earns profits from the Morovis store. *See Id.*

Whereas, Sally Beauty Supply, LLC, essentially argues that the "Defendant has supplied no evidence to challenge the fact that Sally Beauty earned direct profits from its management of the [Morovis] Store, which ceased as a direct consequence of Defendant's fire." Docket No. 54 at 1-2. Most critical, Plaintiff argues that as All Ways 99 admitted its negligence and stated that the only remaining controversy was the amount of damages, the admission precludes the Defendant from raising this issue. *Id.* at 1.  It is finally asserted by Plaintiff that the argument about contractual privity fails as "[n]egligence provides for the recovery of lost profits when a defendant's failure to exercise reasonable care causes a foreseeable injury, as occurred here." *Id.* According to Sally Beauty, "the 'Transfer Pricing Agreements' are misunderstood by

Defendant, as they merely reflect the cost at which the store purchases products for resale, not the loss suffered by Sally Beauty when its operations were ceased by Defendant's fire." *Id.* at 2.

## II.    STANDARD OF REVIEW

### A.    *Federal Rule of Civil Procedure 12(b)(1)*

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted). *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 149 (1st Cir.2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998), as restated in *Rolón v. Rafael Rosario & Associates, Inc., et al.,* 450 F.Supp.2d 153, 156 (D.P.R.2006). Moreover, [m]otions brought under Rule 12(b)(1) are subject to the same standard of review as Rule 12(b)(6)." *De Leon v. Vornado Montehiedra Acquisition L.P.*, 166 F. Supp. 3d 171, 173 (D.P.R. 2016); s*ee Negrón-Gaztambide v. Hernández Torres*, 35 F.3d 25, 27 (1st Cir. 1994). As such, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." *Rolón, supra*.

More importantly, "Federal Courts are courts of limited jurisdiction," *Rolón,* 450 F.Supp.2d at 156, thus, "this Court has the responsibility to police the border of federal jurisdiction" *Spielman v. Genzyme Corp.,* 251 F.3d 1 (1st Cir.2001), and "must rigorously enforce the jurisdictional limits [standards] that Congress chooses, *Del Rosario Ortega v. Star Kist Foods,* 213 F.Supp.2d 84, 88 (D.P.R.2002)(citing *Coventry Sewage Associates v. Dworkin Realty Co*., 71 F.3d 1, 3 (1st Cir.1995), as restated in *Rolón,* 450 F.Supp.2d at 156. *See also Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, *see Willy v. Coastal Corp.,* 503 U.S. 131, 136–137, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992) [and the collection of cases cited therein] );" *Rossello–Gonzalez v. Calderon–Serra,* 398 F.3d 1, 15 (1st Cir.2004)("Federal courts are courts of limited jurisdiction, and therefore must be certain that they have explicit authority to decide a case. *Bonas v. Town of North Smithfield,* 265 F.3d 69, 75 (1st Cir.2001) (citing *Irving v. United States,* 162 F.3d 154, 160 (1st Cir.1998) (*en banc*)). Thus, we subject the plaintiff's choice of a federal forum to careful scrutiny. *Id.*"

A challenge under Rule 12(b)(1) constitutes a challenge to federal subject matter jurisdiction, which includes ripeness, mootness, sovereign immunity, and subject matter jurisdiction. *See Valentín v. Hospital Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001). Where

4

subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction. *See Skwira v. United States,* 344 F.3d 64, 71 (1st Cir.2003). *See also Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995); *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir.2004). In *Valentin v. Hospital Bella Vista*, 254 F.3d 358, 362–63 (1st Cir.2001), the Court held that Fed.R.Civ.P. 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction," including ripeness, mootness, the existence of a federal question, diversity, and sovereign immunity.

### III.       LEGAL ANALYSIS

The Court begins by noting that the Plaintiff, Sally Beauty Supply LLC (hereinafter, "SBS"), is one of two business segments owned by Sally Beauty Holdings (hereinafter, "SBH"), a publicly traded head of the Sally Beauty brand globally that specializes in retailing and distribution of professional beauty supplies. *See* Docket 54-1 at 2. SBS is "an open-line retailer of professional beauty supplies offering professional beauty supplies to both retail consumers and salon professionals, in North America, South America and Europe". *Id.* "SBS stores generally operate under the Sally Beauty banner." *Id.* Meanwhile, Sally Beauty de Puerto Rico, Inc (hereinafter, "SBPR"), is a for profit domestic corporation incorporated under the laws of the Commonwealth of Puerto Rico. *See* Docket No. 45, Exhibit 1 at 1. All SBPR officials and authorized personnel are from Denton, Texas and the resident agent is Corporate Creations Puerto Rico, Inc. Further, the store that is subject to the instant suit is owned by SBPR as reflected by the *Lease Contract* between Regency Park Associates, S.E., d/b/a Morovis Plaza Shopping Center and Sally Beauty PR. *See* Docket No. 45, Exhibit 2 at 1. SBPR serves also as a subsidiary of SBH. *See* Docket 54 at 3.

*KPMG's Independent Auditors' Report* (hereinafter, "KPMG Report") directed to Sally Beauty

Holdings, Inc. provides in its pertinent part that,

> Sally Beauty de Puerto Rico, Inc. ("the Company", "we", "our") was incorporated
> in 1993 under the laws of the Commonwealth of Puerto Rico and sells professional
> beauty supplies through its retail stores and its commissioned direct sales force
> that calls on salons and licensed salon professionals in Puerto Rico and the
> Caribbean. At September 30, 2018, the Company owned 44 retail stores. The
> Company is a wholly-owned subsidiary of Sally Holdings, Inc. ("Sally Beauty"), a
> company publicly traded in the United States of America.

Docket No. 45, Exhibit 3 at 4. It is important to note that SBPR "is a Puerto Rico corporation, files

Puerto Rico corporate income tax returns and is not included in the consolidated U.S. federal

income tax return of its indirect parent, Sally Beauty [Holdings, Inc.]. Income taxes are accounted

for under the asset and liability method." *Id.* at 6. From the information contained in the KPMG

Report it is evident that SBPR files income tax forms in PR as opposed to the United States. *Id.* at

10.

In turn, pursuant to Mr. Kenneth Newton's *Sworn Declaration*, as Senior Director

Assistant Controller of Sally Beauty Supply, LLC,

> SBS [Plaintiff] directly receives funds for its operation of the Subject Store, which
> were lost when the Subject Store burned down. In this case, SBS has sought
> recovery of its own loss. The funds lost are not speculative or hypothetical; rather,
> they are funds that would have otherwise been reflected on the intercompany
> account specifically attributable to SBS's operations. Since the fire stopped all
> operations at the store, these funds have been lost to SBS.

Docket No. 54, Exhibit A-1 at ¶ 9. Moreover, according to Mr. Newton, "[SBPR] leases the subject

location, but it does not retain any profits from the Subject Store. Instead, all such profits

ultimately flow to SBH, which has ratified the subject lawsuit in the document attached as Exhibit

A-6." *Id.* at ¶ 11.[1] Because SBH, a parent company, is claiming that they are entitled to the lost profits of a store operating under their wholly owned subsidiary, SBS, it is important that the Court analyzes the operational structure at hand and the ramifications of the Plaintiff's allegations and solicited remedy from Defendants.

### A.  Lack of Personal Jurisdiction

A wholly owned subsidiary is an independent legal body that operates freely with a separate structure and framework from its parent company but whose objectives and purposes are completely aligned with those of its parent company. A parent is the total owner of a wholly owned subsidiary's shares who achieves complete control of this separate legal entity with a strategic purpose. "Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience". Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 438-439, 63 S. Ct. 1132, 1134, 87 L. Ed. 1499, 1502 (1943).

> A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. [. . .] With or without a formal "agreement," the subsidiary acts for the benefit of the parent, its sole shareholder.

Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 771, 104 S. Ct. 2731, 2741-2742, 81 L. Ed. 2d 628, 643 (1984). Contrary to a regular subsidiary that might be treated for accounting purposes of the parent company as an accounting asset, a wholly owned subsidiary's sales,

---

[1] Sally Beauty Holdings, Inc., by the undersigned authority, who is duly authorized to make this document, does hereby (1) ratify the action to proceed in the name of Sally Beauty Supply LLC and authorizes the continuation of the action, which is styled *Sally Beauty Supply LLC v. Caribbean Retail Ventures, Inc., et al,* CIVIL NO. 18-1844 (DRD), and (2) does hereby agree to be bound by its result, including its subsidiaries and affiliates." Docket No. 54, Exhibit A-6. The ratification document is signed by Ms. Sheri Caldwell, Sally Beauty Holdings, Inc.'s Associate General Counsel. *See Id.*

expenses, assets and liabilities are reported on the parent company's consolidated financial statements to represent the existence of a 100% ownership of the subsidiary's stock by the parent company. In the case at hand, all sales, expenses, assets and liabilities and as a consequence, all profits, of SBPR are represented in SBH's consolidated financial statements under the name SBS. *See* Docket No. 54, Exhibit 3 at 5. Plaintiff alleges that this is enough evidence to sustain that "Sally Beauty earned direct profits from its management of the Subject Store, which ceased as a direct consequence of Defendant's fire." *See* Docket No. 54 at 1-2.

Concurrently, Defendants argue that SBS lacks the three requirements needed to have constitutional standing: injury in fact, causation, and redressability. Accordingly, they indicate that Plaintiff SBS has not proven any injury in fact since "SBS brings forth no 'concrete' or 'particularized' facts regarding how the alleged 'recognized profits' of its own constitutes injury in fact when the juridical person that suffered the damages was [SBPR]." Docket No. 43 at 6. They emphasize that parent companies and their subsidiaries are separate legal entities and of the existence of a presumption that a corporate entity is separate from its controlling entity under Puerto Rico law. *Id.* at 10. As for causation, Defendants argue that there is no causal nexus between the loss caused by the fire at the subject store and the alleged profit losses by SBS. "SBS's decision to sue All Ways 99 for the losses of a distinct and separate entity, represents an artificial way to plead diversity jurisdiction" *Id.* at 6. According to these allegations, the final requirement, redressability, cannot be fulfilled either since SBS cannot demand a remedy for losses to which they have no contractual claim to. *See* Id. at 10. It is clear that all the allegations relating to a lack of constitutional standing derive directly from the controversy of whether SBS has a direct claim to the sales of the burned down subject store or not. To conclude on this

8

matter, the second claim in All Ways 99's *Motion to Dismiss* must be addressed as well.

Defendants argue that based on the transfer pricing agreement submitted by Plaintiffs there is a

lack of privity and therefore no lost profits relationship between SBPR and SBS, instead "the only

'transfer pricing agreement' that SBS produced is between [SBPR] and another entity: Arcadia

Beauty Labs, LLC, a completely separate entity from SBS." *See* Docket 43 at 4. Consequently,

Defendants argue that:

> It is not even SBS but Arcadia which may have failed to obtain "recognized profits"
> from the application of the "pricing transfer agreement" to which SBS is not a
> party. Accordingly, there is no basis for any entity, particularly SBS, including
> affiliates or matrix corporations, to attempt to seek remedies that belong
> exclusively to SPR.

*See* Docket 43 at 10. Defendants sustain that "SBS is an affiliate of SPR and, pursuant to 'transfer

pricing agreements,' [SBPR] compensates certain affiliates 'for certain services provided.' The

report even clearly reflects that [SBPR] pays Puerto Rico income taxes for the revenues earned

on its sales." Docket 43 at 4.

First, the Court must stress that the use of the word *affiliate* cannot successfully imply

what All Ways 99 intended in the *Motion to Dismiss*. Black's Law Dictionary defines *affiliate* as

"[a] corporation related to another corporation by shareholdings or other means of control; a

subsidiary, parent, or sibling corporation." Black's Law Dictionary 67 (9th ed. 2009). Therefore,

since SBS is an affiliate of SBPR the company can allege ownership of the subject store's profits.

Whether they are entitled to or not is a matter of merits that will not be addressed or discussed

at this moment. Second, Defendants contend that "neither of the two parties to this case were

parties to the only 'transfer pricing agreement' (Exhibit 4) produced in response to All Ways 99's

request for 'any and all transfer pricing agreements'". Docket 43 at 12. Therefore, "SBS lacks

privity with respect to All Ways 99 and the claim should be dismissed." *Id.* Per examination of the transfer pricing agreement and the additional exhibits and information provided, the Court finds that the transfer pricing agreements do not define the relationship between the Subject Store, SBPR and SBS. It is merely a contract between affiliates that facilitates the parent company's control over its franchise, product supply and brand through its subsidiaries. Additionally, it permits the subsidiary to mirror its operations to those of any other Sally Beauty Store worldwide. Lastly, and as previously stated, all subsidiaries and affiliates are separate legal entities that report income taxes in the place where they have been incorporated, this being one of the most characteristic traits of the parent-subsidiary relationship. "A corporation may adopt the subsidiary form of organization for valid management and related purposes. Separate incorporation may improve management, avoid special tax problems arising from multistate operations, or serve other legitimate interests." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 772-773 (1984). The fact that the subject store and SBPR pay income taxes in Puerto Rico does not affect in any manner whatsoever the flow of profits from the subsidiary to its parent company for purposes of this analysis.

Defendants additionally allege that "there is no caselaw supporting the proposition that a person or entity can seek damages on behalf of another person or entity, which is exactly what SBS pretends to do in the instant case." This Court notes that although the related case law is limited, there are some cases which have addressed similar situations as the one presented herein. The leading case is *Mars, Inc. v. Coin Acceptors, Inc.* wherein Mars, an American multinational manufacturer of confectionery, food products, pet products and a provider of animal care services, claimed patent infringement damages by virtue of a parent-subsidiary

relationship with Mars Electronics International, Inc. (hereinafter, "MEI") and its consolidated financial statements. Mars claimed that MEI's lost profits were inherently lost profits of Mars. *See* Mars, Inc. v. Coin Acceptors, Inc., 527 F.3d 1359 (Fed. Cir. 2008). The Court recognized that the parent company and the subsidiary had standing to appear as co-plaintiffs in the patent infringement case. "There is no dispute that MEI's lost sales may have caused harm to Mars." Mars, Inc.., 527 F.3d at 1365. The Federal Circuit Court of Appeals acknowledged the "economic reality that a parent corporation loses money when its wholly owned subsidiary loses money". (citations omitted) *Id.*

> In their Motion to Dismiss Defendants state that:
>
> The "profits" earned from the store belong to the corporation that operates the store. Whether [SBPR] later distributed those profits to other entities cannot serve as a basis for those entities to file suit for damages suffered by the store and in doing so blatantly disregard basic diversity jurisdictional principles.

Docket 43 at 7-8. Pursuant to the above, the Court shall examine whether there exists a possibility that Plaintiffs have any claim to the lost profits caused by the subject store fire. The Court then once again examines the *Mars* case as reference. After addressing that parent company and subsidiary both had constitutional standing in the damages claim against Coin Acceptors, Inc., the *Mars* Court had to determine "**whether that harm is compensable under a lost profits theory**." *Id.* The Plaintiffs in *Mars* heavily relied on *Poly-America, L.P. v. GSE Lining Tech.*, another patent infringement case where the Court refused to determine if the parent company could recover tort damages. *See* Poly-America, L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303 (Fed. Cir. 2004). "Whether lost profits are legally compensable in a particular situation is a question of law that we *review de novo*". Poly-America, L.P., 383 F.3d 1311. Ultimately the Court determined that the Plaintiff should have proved that the subsidiary's profits "inexorably flowed" to the parent

11

company and since "Mars itself did not lose any sales and [there] was no evidence that profits from MEI's sales flowed inexorably to Mars" the parent company could not recover the lost profits under the lost profits theory. <u>Mars, Inc. v. Coin Acceptors, Inc.</u>, 527 F.3d 1359, 1364 (Fed. Cir. 2008). Plaintiffs have alleged in their Response to the Motion to Dismiss that "<u>SBPR retains no profits from the Subject Store —all profits ultimately flow to Sally Beauty Holdings, which has ratified this action under Federal Rule of Civil Procedure 17</u>" Docket 54 at 4. The Federal Circuit Court of Appeals did not however determine what "inexorably flowed" meant specifically and there is no precedent as to what would happen if the Plaintiff could prove this matter to the Court. They stated the following: "[b]ecause we conclude that MEI's profits did not--as Mars argued--flow inexorably to Mars, <u>we, like the *Poly-America* court, need not decide whether a parent company can recover on a lost profits theory when profits of a subsidiary actually *do* flow inexorably up to the parent</u>." <u>Mars, Inc. v. Coin Acceptors, Inc.</u>, 527 F.3d 1359, 1367 (Fed. Cir. 2008)(Emphasis ours). This lack of specificity does not nevertheless hinder Plaintiffs from seeking a remedy in this Court.

### B. Defendants deny the existence of a judicial admission of negligence

All Ways 99 argues that the judicial admission of negligence stated in their *Answer to Complaint* is no longer valid since "SBS misled All Ways 99 into thinking that it was the operator of the Sally Beauty store". Docket 61 at 2. They claim instead that:

> It was simply meant as a good-faith admission of negligence with respect to the damages caused to the store as a physical structure. It could not have been meant as an admission that a remote legal entity "lost profits" as a result of the fire, let alone considering the jurisdictional implications thereto.

Docket 61 at 4. All Ways 99's *Answer to Complaint* contained the following statements: "[t]he appearing defendant admits the improper use of a gasoline powered generator that resulted in

a fire and admits the negligence" Docket No. 8 ¶ 12; "[a]s of Paragraph 16 of the Complaint, it is admitted that the acts or omissions of the appearing defendant employees caused damages to Plaintiff." Docket No. 8 ¶ 15, and "[d]efendant reiterates and admits negligence for the November 7, 2017 incident." Docket No. 8 ¶ 19.

All Ways 99 attempts to retract from their previous judicial admission of negligence due to an alleged lack of clarity in the original complaint. "SBS murky allegations support the conclusion that All Ways 99 would not have admitted that SBS suffered any damages, if it had known that SPR, not SBS, was the operator of the store." Docket 61 at 2. The Court notes, however, that the statements made by Defendants admitting negligence do not demonstrate in their wording any dependency on who was the party soliciting a remedy from the Court, they merely state that there was indeed negligence in the handling of a gasoline powered generator and as a consequence, a fire erupted. "[S]tatements in a pleading are always admissible against the pleader to prove the matter asserted . . . . they are not merely *evidence* of the matter stated, but operate as 'a *conclusive concession of the truth* of [that] matter,' thereby 'removing it from the issues.' Dang v. Smith, 190 Cal. App. 4th 646, 657, 118 Cal. Rptr. 3d 490, 499, 2010 Cal. (*citing* 1 Witkin, Cal. Evidence (4th ed. 2000) Hearsay, § 97, p. 799.) "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . .  it has the effect of withdrawing a fact from contention." Martinez v. Bally's La., Inc., 244 F.3d 474, 476 (5th Cir. 2001). The effect of a judicial admission consists of "releasing the opponent from proof of fact." *Id.*

Furthermore, upon examination of the original complaint the Court notes that Plaintiff's referred to their loss as being unable to realize profits. "As a direct and proximate result of All

Ways 99's negligence causing the fire, the store location was forced to close its doors. As such, Sally Beauty was ultimately unable to realize profits from that store's local operation." Docket No. 1 ¶ 15. The Court takes these facts into consideration and acknowledges that "[a] judicial admission . . . . has particular force when the admission hurts the conceder's case [and] [an] express concession against one's interest is regarded as highly competent, credible evidence. <u>Gelfo v. Lockheed Martin Corp.</u>, 140 Cal. App. 4th 34, 48, 43 Cal. Rptr. 3d 874, 884-885, 2006 Cal. (*citing* <u>Leasman v. Beech Aircraft Corp.</u> (1975) 48 Cal. App. 3d 376, 382 [121 Cal. Rptr. 768].) In conclusion, Defendants have not provided the Court with a sufficient reason to allow the withdrawal of the admission of negligence for purposes of their *Answer to Complaint*.

### III.    CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Defendants Caribbean Retail Ventures, Inc.'s *Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6)*, at Docket No. 43. Once discovery has concluded, Defendants may renew their arguments regarding the negligence claims, at their discretion, via a motion for summary judgment, if fully applicable pursuant to Fed. R. Civ. P. 56.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, 3rd day of February, 2021.

*S/ Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge